1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

10   ROBERTO ANTONIO BALLARD,

11                                        Petitioner,

12

13        vs.

14

15

16   L. SMALL, Warden, et al.,

17                                      Respondents.

18

CASE NO. 09-CV-957 - IEG (CAB)

ORDER:

(1) ADOPTING IN FULL REPORT AND RECOMMENDATION;

(2) DENYING AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS;

(3) DENYING REQUEST FOR EVIDENTIARY HEARING; and

(4) GRANTING IN PART CERTIFICATE OF APPEALABILITY.

19

20        On May 4, 2009, Petitioner Roberto Antonio Ballard ("Petitioner"), a state prisoner proceeding

21   pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") claiming

22   violations of his federal constitutional rights.  Petitioner is challenging his conviction in the Superior

23   Court for the County of San Diego, case number SCE247764, for involuntary manslaughter and

24   assault on a child with force likely to produce great bodily injury resulting in death. (Lodgment No.1,

25   vol. 2 at 0284-85.)

26        Petitioner alleges the following constitutional violations in his Petition: 1) the trial court failed

27   to properly instruct the jury on all elements of the crime; 2) he was denied his right to a speedy trial;

28   3) he was shackled in the presence of the jury without a prior finding by the trial court of manifest

necessity; and 4) the trial court refused to acknowledge exculpatory evidence exonerating him. Petitioner also seeks an evidentiary hearing regarding the issue of exculpatory evidence.  This matter was referred to Magistrate Judge Bencivengo, pursuant to 28 U.S.C. § 636(b)(1)(B).  Respondent filed an answer on September 10, 2009, asserting all claims are procedurally barred, and, notwithstanding, fail on the merits.  [Doc. No. 11]. Petitioner filed his Traverse on November 13, 2009.

On January 5, 2010, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending the Court deny both the Petition and request for evidentiary hearing. [Doc. No. 18]. Petitioner filed objections to the R&R on February 1, 2010. [Doc. No. 19].  Having undertaken a *de novo* review of the record and having considered Petitioner's claims, the R&R, and Petitioner's objections, the Court hereby: (1) ADOPTS IN FULL the R&R; (2) DENIES and DISMISSES the petition; (3) DENIES the request for an evidentiary hearing; and (4) GRANTS a certificate of appealability as to claim three.

## BACKGROUND

### I.     Factual Background

The Court adopts the factual background as stated by the Magistrate Judge, (see R&R, at 2-3), which in turn takes the facts from the Court of Appeal's opinion in People v. Ballard, No. D049103, 2007 WL 1600386 (Cal. Ct. App. June 5, 2007). Pursuant to 28 U.S.C. § 2254(e)(1), the Court, as did the Magistrate Judge, presumes the factual determinations to be correct.

### II.    Procedural Background

The San Diego County District Attorney's office charged Petitioner on February 16, 2005, with one count of assault on a child by means of force likely to produce great bodily injury resulting in death, a violation of California Penal Code ("Penal Code") § 273ab, and one count of murder, a violation of Penal Code § 187(a). (Lodgment No. 1, vol. 1 at 0001-02.)  The Information also alleged Petitioner served a separate prison term for a prior conviction within the meaning of Penal Code §§ 667.5(b) and 668 (Prison Prior). (Id.)

On April 21, 2006, after a bifurcated trial, a jury found Petitioner guilty of assault on a child with force likely to produce great bodily injury resulting in death under Penal Code § 273ab, and involuntary manslaughter, a lesser included offense of murder, under Penal Code § 187(a). (Lodgment

No. 2, vol. 10 at 1426-27.)  At a subsequent hearing, Petitioner admitted he had served a prior prison term within the meaning of Penal Code §§ 667.5 and 668. (Lodgment No. 2, vol. 11 at 1501-05.)  On July 18, 2006, Petitioner appeared at the sentencing hearing and was sentenced to 26 years to life. (Id. at 1513-51.)  On December 11, 2006, Petitioner appealed to the California Court of Appeal, which affirmed the conviction and sentence in a June 5, 2007, unpublished opinion. (Lodgments No. 3, 4, 5, 6.)  On June 22, 2007, Petitioner filed a Petition for Review in the California Supreme Court, which that court denied without comment or citation on August 8, 2007. (Lodgments No. 7, 8.)

Petitioner then filed a petition for writ of habeas corpus in the San Diego Superior Court on November 29, 2007, which was denied in an unpublished opinion on December 6, 2007. (Lodgments No. 9, 10.)  Petitioner thereafter filed a petition writ of habeas corpus in the California Court of Appeal on February 8, 2008. (Lodgment No. 11.)  This petition was also denied in an unpublished opinion on May 9, 2008. (Lodgment No. 12.)  Ultimately, on June 2, 2008, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Lodgment No. 13.)  On December 10, 2008, the California Supreme Court denied the petition with citation to In re Dixon, 41 Cal. 2d 756 (1953).  No opinion or other explanation followed the citation. (Lodgment No. 14.)

The instant Petition was timely filed.  Respondent filed an answer and Petitioner submitted a Traverse. [Doc. Nos. 11, 17]  The Magistrate Judge issued the R&R, recommending the Court deny and dismiss the Petition on the merits, and deny the request for an evidentiary hearing. [Doc. No. 18].  Petitioner subsequently filed his objections to the R&R. [Doc. No. 19].  Petitioner only raises specific objections as to the shackling claim (claim three), but otherwise only makes a general objection to the R&R's rejection of his other claims. [See Id.]

## STANDARD OF REVIEW

A federal court may grant a habeas corpus petition pursuant to 28 U.S.C. § 2254 only if the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 403, 412-13 (2000). To grant a habeas petition upon a State court decision that was "contrary to" clearly established federal law, the state

court must either have made a finding on a question of law which was "opposite to that reached" by the Supreme Court, or judged a case differently than the Supreme Court has "on a set of materially indistinguishable facts." Id. at 413. In order to grant a habeas petition upon a finding that the state court's adjudication of a claim involved "an unreasonable application" of clearly established federal law, the state court must have correctly identified the "governing legal principle" from Supreme Court precedent, but unreasonably applied that principle to the facts of the prisoner's case. Id.

When making the "unreasonable application" inquiry, a federal habeas court asks "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. The state court's decision must be more than "incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). To warrant habeas relief, the state court decision must be in violation of a Supreme Court decision either directly addressing the issue before the state court or clearly establishing a "controlling legal standard" applicable to the petitioner's claims. See Wright v. Van Patten, 552 U.S. 120, 125 (2008); Panetti v. Quarterman, 551 U.S. 930, 953 (2007).

Habeas relief may also be granted where the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**ANALYSIS**

Since Petitioner objects to the recommendations of the Magistrate Judge on all four claims, this Court must review *de novo* those portions of the R&R. 28 U.S.C. § 636(b)(1)(C); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004). Under 28 U.S.C. § 636 (b)(1)(C), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Where the state's highest court has not provided a reasoned decision for the claims at issue, the Court "looks through" to the "last reasoned" state court decision. Ylst v. Nunnemaker, 501 U.S. 797, 804-06 (1991). The last reasoned state opinion is the "last *explained* state-court judgment" on the Petitioner's

claim which is "informative with respect to the question before us." Id. at 805.  When the dispositive state court's judgment "does not supply reasoning for its decision," federal habeas courts must conduct "an independent review of the record" to decide whether the state court's adjudication of the issue was contrary to, or involved an unreasonable application of, clearly established federal law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds by Andrade, 538 U.S. at 75-76.

In this case, Petitioner alleges four constitutional violations: 1) the trial court failed to properly instruct the jury on all elements of the crime in declining to provide a definition for "conscious disregard" for human life as requested by the jury during jury deliberations;  2) he was denied his right to a speedy trial due to the trial court's delay of the proceedings; 3) he was shackled in the presence of the jury without a prior finding by the trial court of manifest necessity and thus denied his right to a fair trial; and 4) the trial court refused to acknowledge evidence withheld by prosecution establishing his innocence, for which Petitioner is requesting an evidentiary hearing.

# I.      Procedural Default

Respondent asserts Petitioner's claims one, two, and four are procedurally barred because the state habeas courts, citing to In re Dixon, 41 Cal. 2d 756 (1953), determined Petitioner failed to present these claims on direct appeal. Respondent asserts claim three is also procedurally defaulted because the state appellate court, citing People v. Ward, 36 Cal. 4th 186, 206 (2005), decided Petitioner's trial counsel did not object to the ankle restraint at trial. The decisions of the Supreme Court "suggest that the procedural-bar issue should ordinarily be considered first."  Lambrix v. Singletary, 520 U.S. 518, 524 (1997).  Accordingly, the Court addresses this issue at the outset.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991) (citation omitted).  This is true "whether the state law ground is substantive or procedural."[1] Id. (citation omitted). Federal courts cannot review "such independently supported judgments on direct appeal: since the state-law

---

[1]The doctrine bars federal habeas when a state court declines to "address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." Coleman, 501 U.S. at 729 (citation omitted).

determination is sufficient to sustain" the judgment. Lambrix, 520 U.S. at 522. If there is an "adequate and independent finding of procedural default," the petitioner will be precluded from obtaining federal habeas review of a federal claim unless he can demonstrate: 1) "cause" exists for the default and actual "prejudice" resulted from the claimed violation, or 2) a "fundamental miscarriage of justice" will result from failure to consider the claim. Harris v. Reed, 489 U.S. 255, 262 (1989) (citation omitted).

In this case, Petitioner's claims one, two, and four (based on instructional error, speedy trial, and evidence of actual innocence) were presented in a state habeas corpus petition and denied by the California courts because of Petitioner's failure to present them on direct appeal. (See Lodgments No. 13, 14.) As to claim three (denial of a fair trial due to shackling him in the presence of the jury), Petitioner presented it to the California Court of Appeal, which denied it on the ground that Petitioner's trial counsel failed to object to the ankle restraint at trial. See Ballard, 2007 WL 1600386, at *2.

In reviewing the California Supreme Court's denial of Petitioner's claims one, two, and four, under Dixon, the Magistrate Judge properly exercised her discretion and proceeded to the merits of these claims since adjudicating the issue of procedural default would have been "more complicated and time consuming." See Boyd v. Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998) (quoting Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982)). As to claim three, the Magistrate Judge correctly concluded federal review is not barred because Respondent failed to assert that the procedural bar applied by the appellate court denying this claim was an "independent and adequate" state ground and therefore failed to meet the initial burden under Bennet v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003). Accordingly, this Court will also proceed to the merits of Petitioner's claims. Because the state courts denied all of Petitioner's claims on procedural grounds, and did not reach the merits of the claims, this Court conducts a *de novo* review. See Pirtle v. Morgan, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

**II.     Petitioner's Claims**

      **A.     Instructional Error (Claim One)**

Petitioner asserts the trial court failed to properly instruct the jury on all elements of the crime of assault on a child with force likely to produce great bodily injury resulting in death, which resulted in a denial of due process and his right to a fair trial. Petitioner alleges instructional error occurred

when the trial court declined to provide a definition for "conscious disregard"[2] as requested by the jury during jury deliberations and instead directed the jury to "use the everyday meaning" of the phrase. (Mem. of P. & A. Supp. Pet. at 11-12; Lodgment No.1, vol 2 at 194-95.)  The Magistrate Judge correctly identified the relevant inquiry as "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." See Cupp v. Naughten, 414 U.S. 141, 147 (1973). To warrant habeas relief, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. at 146.

In making the determination, the instruction "'may not be judged in artificial isolation,'" but must be "considered in the context of the instructions as a whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). A "judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." Cupp, 414 U.S. at 147.

Here, Petitioner was charged with one count of assault on a child by means of force likely to produce great bodily injury resulting in death and one count of second degree murder. (Lodgment No. 1, vol. 1 at 0001-02.)  The court instructed the jury on these crimes, as well as on the crime of involuntary manslaughter (a lesser included offense of second degree murder) with the Judicial Council of California Criminal Jury Instructions ("CALCRIM").[3] (Lodgment No. 1, vol. 2 at 178-79, 181-82, 187-88).  A finding of "conscious disregard" was required for Petitioner to be found guilty of second degree murder, but was not required for Petitioner to be found guilty of involuntary manslaughter or assault on a child resulting in death.  The crux of Petitioner's first claim is that the states of mind for the crimes of second degree murder (of which he was acquitted) and assault on a child causing death (of which he was convicted) are equivalent.

---

[2]Although Petitioner asserts the jury requested the meaning of "conscious disregard for human life," (see Mem. of P. & A. Supp. Pet. at 10-11), in actuality the jury note stated, "what is the meaning of conscious disregard?" (See Lodgment No.2, vol. 2 at 194).

[3] CALCRIM was adopted in 2005 as the official jury instructions in California.

1     Petitioner's theory, however, is supported by nothing more than speculation.  The Magistrate

2   Judge noted the jury instructions accurately defined the crimes for which Petitioner was charged and

3   their elements under California law, and contained no errors. Moreover, the Magistrate Judge correctly

4   concluded that even if instructional error had occurred, when viewed in light of the entire trial record,

5   "the ailing instruction by itself" did not so infect "the entire trial that the resulting conviction violates

6   due process."[4] See Cupp, 414 U.S. at 147.

7     Having reviewed the trial record, and noting no specific objection from Petitioner as to this

8   claim, the Court agrees with the Magistrate Judge's recommendation.  Accordingly, the Court finds

9   Petitioner is not entitled to habeas relief on his first claim.

10     **B.**    **Violation of Right to a Speedy Trial (Claim Two)**

11     Petitioner next argues the trial court delayed proceedings without "a valid waiver" and violated

12   Petitioner's "right to a speedy trial to his prejudice." (Pet. at 7; Mem. of P. & A. Supp. Pet. at 15.)  To

13   determine whether Petitioner has been deprived of his right to a speedy trial, the Court considers the

14   following four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his

15   right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972).  The Magistrate

16   Judge concluded the time between Petitioner's first court appearance on February 16, 2005, and the

17   trial date of April 6, 2006, was "presumptively prejudicial" and thus triggered examination of the

18   remaining Barker factors. See Doggett v. United States, 505 U.S. 647, 651-52 (1992).

19     Having considered the remaining Barker factors, the Court agrees with the Magistrate Judge

20   and finds Petitioner's speedy trial rights were not violated by any delay.  As the Magistrate Judge

21   pointed out, the majority of the delays were attributed to requests for continuances by Petitioner's

22   attorneys.  Moreover, the record indicates Petitioner agreed to the great majority of the continuances.

23

24       [4]Evidence at trial included: 1) the exhibits - which contained Petitioner's statements to law enforcement stating he saw the victim fall from the table, (Lodgment No.1, vol. 1 at 42), and photos

25   of the victim's injuries showing bruises that resembled finger marks to the side of the head and right calf, and bruising to the back, shoulder, thigh, and right arm, (Lodgment No.2, vol. 1 at 20-25;

26   Lodgment No.2, vol. 8 at 1213-15); 2) testimony by the victim's mother stating she did not notice any bruises when she bathed the child that morning before leaving the child in Petitioner's care,

27   (Lodgment No. 2, vol. 1 at 92-94); 3) medical testimony stating the injuries suffered were not consistent with an accident, but rather "consistent with blunt force trauma to multiple parts of the

28   body," (Lodgment No. 2, vol. 4 at 611-12); and 4) law enforcement's testimony regarding Petitioner's inconsistent statements of how the victim sustained the injuries that led to his death, (Lodgment No. 2, vol. 6 at 879-1010).

1    Petitioner's failure to assert the right to a speedy trial, therefore, "makes it difficult for Petitioner to

2    prove that he was denied a speedy trial." See Barker, 407 U.S. at 532. As the Supreme Court has

3    indicated, "barring extraordinary circumstances," the Court would be hesitant to find "that a defendant

4    was denied this constitutional right on a record that strongly indicates, as does this one, that the

5    defendant did not want a speedy trial." Id. at 536.

6         Lastly, Petitioner failed to demonstrate any prejudice from the delay. Prejudice to a defendant

7    is "assessed in the light of the interests of defendants which the speedy trial right was designed to

8    protect." Id. at 532.  The Supreme Court has identified three such interests: "(i) to prevent oppressive

9    pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

10   possibility that the defense will be impaired." Id.  Petitioner has not alleged any facts, and the record

11   is devoid of any, indicating he was prejudiced by the delay.

12        Accordingly, having reviewed the record, and noting Petitioner raises no specific objection as

13   to this claim, the Court agrees with the Magistrate Judge's recommendation that federal habeas relief

14   is not warranted as to claim two.[5]

15        C.    Shackling: Abuse of Discretion (Claim Three)

16        Petitioner's third claim alleges a violation of due process and denial of a fair trial because he

17   remained shackled in the presence of the jury. It is well established that "the sight of shackles and gags

18   might have a significant effect on the jury's feelings about the defendant." Illinois v. Allen, 397 U.S.

19   337, 344 (1970); accord Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999) (noting that shackles

20   create "an inherent danger that the jury may form the impression that the defendant is dangerous or

21   untrustworthy"). Accordingly, "the Fifth and Fourteenth Amendments prohibit the use of physical

22   restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they

23   are justified by a state interest specific to a particular trial." Deck v. Missouri, 544 U.S. 622, 629

24   (2005); accord Williams v. Woodford, 384 F.3d 567, 591 (9th Cir. 2004) ("A criminal defendant has

25

26

27        [5] In regards to Petitioner's Equal Protection challenge, Petitioner  failed to provide any facts
     to support the claim.  The Magistrate Judge properly concluded Petitioner wholly failed to establish

28   he was treated differently from similarly situated individuals, and is therefore not entitled to relief
     because "conclusory allegations which are not supported by a statement of specific facts do not
     warrant habeas relief." See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

1    a constitutional right to be free of shackles and handcuffs in the presence of the jury absent an

2    essential state interest that justifies the physical restraints." (citations omitted)).

3         However, shackling by itself does not entitle Petitioner to habeas relief. Rather, Petitioner must

4    also demonstrate the shackling was "seen by the jury" and there was no "adequate justification" given

5    for the shackling. See Deck, 544 U.S. at 635; accord Larson v. Palmateer, 515 F.3d 1057, 1062 (9th

6    Cir. 2008) ("Visible restraints are therefore not permitted unless the trial court finds that they are

7    necessary while 'taking account of the circumstances of the particular case.'" (citing Deck, 544 U.S.

8    at 632)). In this case, there is no evidence in the record to demonstrate the physical restraints were

9    visible to the jury.  The record reflects that Petitioner's hands were not restrained, and that Petitioner's

10   ankle restraint was under a table which was covered by a table skirt all the way around. (Lodgment

11   No. 2, vol. 5 at 830-31.) The record also indicates Petitioner was dressed in civilian clothes, he did

12   not testify before the jury, and that during voir dire and the trial he was seated whenever the jury

13   entered and exited the courtroom. (Id., vol. 1 at 1, 5, 61; id., vol. 2 at 250, 260, 262, 277, 279, 280;

14   id., vol. 5 at 698, 827; id. vol. 7 at 1017, 1025). Finally, the record demonstrates Petitioner's trial

15   counsel declined, and the trial court decided not to give, a jury instruction regarding shackling because

16   they both agreed the shackling was not "obvious" or "visible to anybody." (Id., vol. 5 at 830-31.)

17   Accordingly, because there is no evidence in the record that the shackles were visible to the jury,

18   Petitioner cannot prevail on this claim.[6] See Deck, 544 U.S. at 635; Larson, 515 F.3d at 1062.

19        Moreover, even if Petitioner can demonstrate a constitutional error as a result of the shackling,

20   the Court must nonetheless assess whether this error "'had substantial and injurious effect or influence

21   in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (citation

22   omitted); see also Fry v. Piller, 551 U.S. 112, 119-20 (2007) (holding that Brecht harmless error

23   _____

24        [6] To the extent Petitioner argues the trial court's decision was based on an unreasonable
     determination of the facts in light of evidence presented in the state proceeding, Petitioner failed to
25   meet his burden. As previously stated, clear and convincing evidence contradicting the state court's
     factual determination is required to render a state court's decision objectively unreasonable. See
26   Miller-El, 537 U.S. at 340. Here, Petitioner's only contrary evidence is his declaration that he
     remembers a juror leaning over to another juror, talking back and forth while looking down in the
27   direction of Petitioner's shackles, and pointing a finger at his shackles. (POF&R at 7.) This, however,
     is insufficient by itself to contradict by clear and convincing evidence the state court's determination
28   that the shackles were not visible to the jury. In any event, even if true, "[t]he jury's 'brief or
     inadvertent glimpse' of a shackled defendant is not inherently or presumptively prejudicial," and
     therefore does not amount to a constitutional error. Ghent v. Woodford, 279 F.3d 1121, 1133 (9th Cir.
     2002) (citations omitted).

review applies whether or not the state court recognized the error and reviewed it for harmlessness); Larson, 515 F.3d at 1064 (applying Brecht harmless error review where the defendant was compelled to wear a security leg brace). To determine whether the imposition of physical restraints constituted prejudicial error, the Ninth Circuit has considered "the appearance and visibility of the restraining device, the nature of the crime with which the defendant was charged and the strength of the state's evidence against the defendant." Larson, 515 F.3d at 1064 (citation omitted). In this case, the jury's awareness of the shackles was minimal at best. On the other hand, because Petitioner was charged with a violent crime, "the risk of prejudice increases, because shackling 'essentially brands him as having a violent nature.'" Id. (citation omitted). Concerns about prejudice are mitigated, however, where the state's evidence against the defendant is "overwhelming," see id., as it was in this case.

For the foregoing reasons, although Petitioner's allegedly visible shackling without adequate justification is troubling, Petitioner failed to demonstrate that it had a "substantial and injurious effect or influence in determining the jury's verdict."[7] See Brecht, 507 U.S. at 623. Accordingly, the Court agrees with the Magistrate Judge's recommendation and denies habeas relief as to claim three.

D.    Actual Innocence / Exculpatory Evidence

Petitioner's fourth and final claim alleges the trial court refused to acknowledge evidence exonerating him, and the prosecution withheld exculpatory evidence in violation of his federal due process right as prescribed in Brady v Maryland, 373 U.S. 83 (1963). Petitioner alleges the prosecutor withheld information that the victim was throwing up blood for two days prior to the underlying incident in this case, and that the victim's four year old sister, who was two years old at the time, had witnessed the murder. Petitioner seeks an evidentiary hearing on this claim. The R&R sets forth the correct legal standard for reviewing both Petitioner's claim that a Brady violation occurred and his request for an evidentiary hearing.

_____

[7] Petitioner's reliance on Lewis v. Marshall, 612 F. Supp. 2d 185 (N.D. N.Y. 2009), is misplaced. In that case, after finding the petitioner was "visibly shackled" without justification, the district court granted habeas relief without requiring the petitioner to demonstrate "actual prejudice." Lewis, 612 F. Supp. 2d at 198-99. The present case is different, however, because Petitioner has failed to rebut the state court's determination that the shackles were *not* visible to the jury. Moreover, even if the shackles were visible to the jury, Petitioner has failed to demonstrate that this error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623 (citation omitted). As the Ninth Circuit decision in Larson, 515 F.3d at 1064, demonstrates, it is the Brecht harmless error review, and not the Champan v. California, 386 U.S. 18 (1967), higher standard applied by the district court in Lewis, that properly governs in this case.

*1.      Exculpatory Evidence*

In <u>Brady</u>, the Supreme Court proclaimed that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Supreme Court has "since held that the duty to disclose such evidence is applicable even though there has been no request by the accused." <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 107 (1976)).  The Supreme Court has explained that "strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." <u>Id.</u> at 281. There are three components of a true Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Id.</u> at 281-82. In adjudicating the merits of the <u>Brady</u> claim in this case, the Magistrate Judge correctly determined Petitioner could not establish a <u>Brady</u> violation occurred.

First, the Magistrate Judge correctly concluded Petitioner failed to establish that the evidence was in fact suppressed by the State.  As the R&R explained, it is clear from the record that the victim's uncle claimed that the victim was allegedly throwing up blood for two days before the incident for the first time at trial. (<u>See</u> R&R at 17-18; <u>see also</u> Lodgment No. 2, vol.2 at 385-86.) Accordingly, this information was not known to the prosecution prior to trial. Similarly, the record also clearly establishes the prosecutor learned the information about the two-year old sibling witnessing the murder when the court-appointed advocate testified about it at the sentencing hearing. (<u>See</u> Lodgment No. 2, vol. 11 at 1538.) Because Petitioner presents no evidence the prosecutor was previously aware of this allegedly exonerating information, Petitioner is unable to establish the State suppressed it.

Second, the Court agrees with the Magistrate Judge that Petitioner cannot establish he was prejudiced by any alleged suppression. In determining the question of prejudice, the Court analyzes the allegedly suppressed evidence "in the context of the entire record." <u>Benn v. Lambert</u>, 283 F.3d 1040, 1053 (9th Cir. 2002) (quoting <u>Agurs</u>, 427 U.S. at 112). "Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial." <u>Id.</u>  As the Magistrate Judge

explained, considerable evidence was presented at trial indicating the victim died from injuries sustained in a violent physical attack while under Petitioner's care.[8] (R&R at 19.) Accordingly, the Court agrees with the Magistrate Judge that the allegedly suppressed evidence was not so prejudicial to Petitioner as to "undermine[] confidence in the outcome of the trial." See Benn, 283 F. 3d at 1053.

### 2. *Evidentiary Hearing*

Petitioner's request for an evidentiary hearing is governed by 28 U.S.C. §2254(e)(2). Williams, 529 U.S. at 429. The court must first determine whether a "factual basis exists in the record" to support the petitioner's claim. See Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). If it does not, the court must next determine whether the petitioner has "failed to develop the factual basis" of that claim in state court proceedings. 28 U.S.C. § 2254(e)(2). If so, § 2254(e)(2) provides that the court shall not hold an evidentiary hearing on the claim, unless petitioner shows that: (A) the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence;" *and* (B) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." On the other hand, if the court determines that petitioner has not "failed to develop the factual basis" in state court, the district court may proceed to consider whether a hearing is appropriate or required under Townsend v. Sain, 372 U.S. 293 (1963). Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005) (quoting Baja, 17 F.3d at 1078).

Here, the Magistrate Judge correctly determined that the trial transcripts and other records in the case provide a sufficient factual basis to decide this claim. Moreover, even if there is no adequate factual basis, Petitioner is not entitled to an evidentiary hearing because he "failed to develop" his claim in state court. See 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner

---

[8] Evidence at trial included: testimony from the victim's brother that he awoke to the victim's cries, the sounds of loud hits, and Petitioner's voice, (Lodgment No. 2, vol. 7 at 1067), as well as medical testimony and testimony from law enforcement which revealed that the victim's injuries were "consistent with blunt force trauma to multiple parts of the body" and that Petitioner's explanation of how the victim was injured while in his care was inconsistent with the injuries suffered, (Lodgment No. 2, vol. 4 at 448-77, 611-12).

or the prisoner's counsel." <u>Williams</u>, 529 U.S. at 432. As the Supreme Court has stated, at the very least, diligence in a usual case would require the petitioner to "seek an evidentiary hearing in state court in the manner prescribed by state law." <u>Id.</u> at 437. In the present case, the Magistrate Judge correctly determined that Petitioner was not diligent, and therefore "failed to develop" his claim, because he never requested an evidentiary hearing on his <u>Brady</u> claim in the habeas corpus petition he filed in the California Supreme Court. (R&R at 17.)

Finally, having failed to develop his claim in state court, Petitioner is not entitled to an evidentiary hearing unless he is able to meet the statute's "stringent requirements" that apply in such situations. <u>See</u> <u>Williams</u>, 529 U.S. at 437. In the present case, Petitioner cannot do that because he cannot demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." <u>See</u> 28 U.S.C. § 2254(e)(2)(B). As the Magistrate Judge noted, evidence that the victim was throwing up blood in the days before his death "may have indicated that he was suffering from some medical condition or injury before he died." (R&R at 19.) Similarly, with respect to the two-year old girl that allegedly witnessed the murder, the Magistrate Judge noted that "there is no evidence that she would have named anyone other than [Petitioner] as the person who killed [the victim]." (<u>Id.</u>) Accordingly, the Court agrees with the Magistrate Judge that Petitioner is not entitled to an evidentiary hearing on this claim.

### 3. Actual Innocence

Petitioner's final claim alleges that denial of his "due process rights has caused a fundamental miscarriage of justice as he is actually innocent." (Pet. at 9; Mem. of P. & A. Supp. Pet. at 21). Petitioner cites <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), and <u>Jaramillo v. Steward</u>, 340 F. 3d 877 (9th Cir. 2003), as support for his claim. However, <u>Schlup</u> and <u>Jaramillo</u> provide an exception which allows for consideration of the merits of a claim that is procedurally barred. Here, because the Court has addressed the merits of Petitioner's claims, it is unnecessary to address the procedural bar exception.[9]

---

[9] In any event, to be entitled to proceed through the "actual innocence" gateway, Petitioner must demonstrate that "a constitutional violation has 'probably resulted in the conviction of one who is actually innocent.'" <u>Jaramillo</u>, 340 F.3d at 881 (quoting <u>Schlup</u>, 513 U.S. at 327)). "This probability is met if it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Id.</u> (citing <u>Schlup</u>, 513 U.S. at 327). In this case, thanks to the victim's uncle's testimony, the jury *was* aware of the fact that the victim was throwing up blood in the days before he

For the foregoing reasons, having reviewed the trial record, the state courts' habeas decisions, the R&R, and noting no specific objection from Petitioner as to this finding, the Court agrees with the Magistrate Judge's recommendation that Petitioner is not entitled to habeas relief on claim four.

### III.   Certificate of appealability

A petitioner complaining of detention arising from state court proceedings must obtain a certificate of appealability ("COA") to file an appeal of the final order in a federal habeas proceeding. 28 U.S.C. § 2253(c)(1)(A). The court may issue a COA only if the petitioner "has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). To make a "substantial showing," the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In other words, the petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Id. (citation and internal quotation marks omitted). In this case, the Court finds Petitioner has made the required showing of the denial of his constitutional rights with respect to his claim for unjustified shackling (claim three), and therefore GRANTS a COA as to this claim to the extent it is raised in the Petition.

### CONCLUSION

For the reasons set forth herein, and based upon the Court's *de novo* review, the Court hereby (1) **REJECTS** Petitioner's objections; (2) **ADOPTS IN FULL** the Magistrate Judge's R&R; (3) **DENIES** the request for an evidentiary hearing; (4) enters the judgment **DENYING and DISMISSING** the Petition, and (5) **GRANTS** a COA as to claim three.

**IT IS SO ORDERED.**

DATED:  July 6, 2010

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

_____

died. As for the two-year old witnessing the murder, as already noted, Petitioner cannot demonstrate that the result of his trial would have been any different had the jury been apprised of this fact.